UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| **STATE OF TEXAS**<br>　　*Plaintiff*,<br><br>v.<br><br>**XAVIER BECERRA,** in his official capacity as Secretary of Health and Human Services; **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CENTERS FOR MEDICARE & MEDICAID SERVICES (CMS); KAREN L. TRITZ,** in her official capacity as Director of the Survey and Operations Group for CMS; **DAVID R. WRIGHT,** in his official capacity as Director of the Quality Safety and Oversight Group for CMS,<br>　　*Defendants.* | CIVIL ACTION NO. 5:22-CV-185 |

### STATE OF TEXAS'S ORIGINAL COMPLAINT

1.　　The Biden Administration's response to *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), which ended the terrible regime of *Roe v. Wade*, is to attempt to use federal law to transform every emergency room in the country into a walk-in abortion clinic. President Biden is flagrantly disregarding the legislative and democratic process—and flouting the Supreme Court's ruling before the ink is dry—by having his appointed bureaucrats mandate that hospitals and emergency medicine physicians must perform abortions. But Defendants' Abortion Mandate forces hospitals and doctors to commit crimes and risk their licensure under Texas law. The Emergency Medical Treatment and Labor Act (EMTALA) that Defendants cite as the basis for their Abortion Mandate does not authorize—and has never authorized—the federal government

to compel healthcare providers to perform abortions. Defendants' Abortion Mandate is unlawful and must be set aside.

## I.   PARTIES

2. Plaintiff the State of Texas is a sovereign State of the United States.

3. Defendant Xavier Becerra is Secretary of the United States Department of Health and Human Services (HHS). He is sued in his official capacity.

4. Defendant HHS is a cabinet-level executive branch department of the United States.

5. The Centers for Medicaid and Medicare Services (CMS) is a division of HHS.

6. Defendant Karen L. Tritz is Director of the Survey & Operations Group of CMS. She is sued in her official capacity.

7. David R. Wright is Director of the Quality, Safety and Oversight Group of CMS. He is sued in his official capacity.

## II.   JURISDICTION & VENUE

8. This Court has jurisdiction under 5 U.S.C. §§ 702 and 703 and 28 U.S.C. §§ 1331, 1346, and 1361.

9. The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 702 and 706 and 28 U.S.C. §§ 1361, 2201, and 2202.

10. Venue is proper within this District under 28 U.S.C. § 1391.

## III.   BACKGROUND

11. The Social Security Act and federal healthcare laws are extensive and complex, and Defendants have weaponized that complexity to issue a mandate that runs afoul of multiple federal statutes as described below. The interlocking federal statutes and requirements lead to one

conclusion: the federal executive branch cannot achieve its unlawful policy outcomes by attempting to codify a federal right to abortion where none exists.

**A.**     *Dobbs v. Jackson Women's Health Organization*

12.     On June 24, 2022 the Supreme Court of the United States overturned *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992). *Dobbs*, 142 S. Ct. at 2242. In the opinion, the Supreme Court clarified that "the Constitution does not confer a right to abortion," "does not prohibit the citizens of each State from regulating or prohibiting abortion," and returned the issue of abortion to the States. *Id.* at 2279, 2284. "The Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion." *Id.* at 2284.

**B.**     **The Biden Administration's Response to *Dobbs***

13.     On the day the Supreme Court announced its decision in *Dobbs*, President Biden held a press conference and announced that "[t]he only way we can secure a woman's right to choose and the balance that existed is for Congress to restore the protections of *Roe v. Wade* as federal law."[1]

14.     The next day, Secretary Becerra stated in an interview to NBC News that Americans "can no longer trust" the Supreme Court.[2] When asked what Secretary Becerra was doing "in response

---

[1] *Remarks by President Biden on the Supreme Court Decision to Overturn Roe v. Wade*, The White House (June 24, 2022), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/06/24/remarks-by-president-biden-on-the-supreme-court-decision-to-overturn-roe-v-wade/ (last visited July 14, 2022).

[2] *HHS Secretary Becerra talks women's future with abortion following Roe v. Wade decision* (NBC News broadcast June 25, 2022), https://www.nbcnews.com/video/women-s-future-with-abortion-implementing-harm-reduction-with-addiction-142836293922, at 1:45 (last visited July 14, 2022).

to the Court's decision,"[3] he responded, "we have no right to do mild. And so we're going to be aggressive and go all the way."[4]

15. On July 8, 2022, President Biden issued an Executive Order titled "Protecting Access to Reproductive Healthcare Services." Exec. Order No. 14,076, 87 Fed. Reg. 42053 (2022).[5] That Order required Secretary Becerra to submit a report to the President "identifying steps to ensure that all patients—including pregnant women and those experiencing pregnancy loss, such as miscarriages and ectopic pregnancies—receive the full protections for emergency medical care afforded under the law, including by considering updates to current guidance on obligations specific to emergency conditions and stabilizing care under the Emergency Medical Treatment and Labor Act [EMTALA], 42 U.S.C. 1395dd." *Id.* at 42054.

16. Four days later, President Biden announced HHS's new mandate purporting to override individual states' abortion laws under the authority of EMTALA.[6]

**C.    EMTALA**

17. In 1986, Congress enacted the Emergency Medical Treatment & Labor Act (EMTALA). Congress enacted EMTALA "to prevent 'patient dumping,' which is the practice of refusing to treat patients who are unable to pay." *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 557 (5th Cir. 2000). With the enactment of EMTALA, every Medicare-participating hospital must

---

[3] *Id.* at 2:19.

[4] *Id.* at 2:59.

[5] Available at https://www.federalregister.gov/documents/2022/07/13/2022-15138/protecting-access-to-reproductive-healthcare-services.

[6] President Biden (@POTUS), Twitter (July 12, 2022, 3:25 PM), https://twitter.com/potus/?lang=en.

provide medical screening and stabilizing treatment for emergency medical conditions regardless of a patient's ability to pay. 42 U.S.C. § 1395dd.

18. EMTALA specifically defines "stabilizing treatment" and "emergency medical conditions."

19. EMTALA defines "emergency medical condition" to include "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain), such that the absence of immediate medical attention could reasonably be expected to result in–(i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily function or part." 42 U.S.C. § 1395dd (e)(1)(A).

20. "To stabilize" means "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." 42 U.S.C. § 1395dd(e)(3).

21. But the Social Security Act, of which EMTALA is part, contains an important limitation: "[n]othing in this subchapter shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided . . . or to exercise any supervision or control over the administration or operation of any such institution, agency, or person [providing health services]." 42 U.S.C. § 1395.

22. EMTALA does not mandate, direct, approve, or even suggest the provision of any specific treatment. It says nothing about abortion.

23. Federal appellate courts have confirmed that EMTALA confers no right to any specific treatment and does not operate as federal oversight on the practice of medicine. "The statutory language of the EMTALA clearly declines to impose on hospitals a national standard of care." *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1258 (9th Cir. 1995).

24. "Congress enacted the EMTALA not to improve the overall standard of medical care, but to ensure hospitals do not refuse essential emergency medical care because of a patient's inability to pay." *Id.* at 1258.

25. Accordingly, the relevant issue is "whether the challenged procedure was identical to that provided similarly situated patients, as opposed to whether the procedure was adequate as judged by the medical profession." *Id.* "A hospital's liability under EMTALA is not based on whether the physician . . . failed to adhere to the appropriate standard of care." *Battle*, 228 F.3d at 557; *see also Guzman v. Mem'l Hermann Hosp. Sys.*, 637 F. Supp. 2d 464, 487 (S.D. Tex. 2009) (Rosenthal, J.) ("EMTALA does not create a national standard of care and is not a medical malpractice statute.").

26. The standard of medical care is determined by the state and the community in which the treatment took place. *E.g.*, *Hannah v. United States*, 523 F.3d 597 (5th Cir. 2008); *Quijano v. United States*, 325 F.3d 564 (5th Cir. 2003); *see also Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361 (Tex. 1987).

27. No federal statute confers a right to abortion. EMTALA is no different. It does not guarantee access to abortion. On the contrary, EMTALA contemplates that an emergency medical condition is one that threatens the life of the unborn child. *See* 42 U.S.C. § 1395dd(e)(1)(A)(i). It is obvious that abortion does not preserve the life or health of an unborn child.

28.     EMTALA provides for civil enforcement actions against both hospitals and physicians. 42 U.S.C. § 1395dd(d). Hospitals and physicians are each subject to a civil penalty of up to $50,000 for each violation. *Id.* § 1395dd(d)(1)(A)–(B).

**D.     The Abortion Mandate**

29.     On July 11, 2022, the Centers for Medicare and Medicaid Services issued agency guidance to all State Survey Agency Directors titled "Reinforcement of EMTALA Obligations specific to Patients who are Pregnant or are Experiencing Pregnancy Loss" (EMTALA Guidance).[7] Additionally, Secretary Becerra issued a letter to providers[8] describing the guidance (together, the "Abortion Mandate"). The EMTALA Guidance purports to simply remind hospitals of their existing obligations under federal law.[9] But it does not: it includes a number of new requirements related to the provision of abortions that do not exist under federal law.

30.     The Abortion Mandate requires that a provider perform an abortion if "abortion is the stabilizing treatment necessary to resolve [an emergency medical condition]."[10] This condition has never been a part of EMTALA.

31.     The EMTALA Guidance also claims that "[w]hen a state law prohibits abortion and does not include an exception for the life of the pregnant person—or draws the exception more narrowly

---

[7] Exh. 1 *Reinforcement of EMTALA Obligations specific to Patients who are Pregnant or are Experiencing Pregnancy Loss*, CENTERS FOR MEDICARE & MEDICAID SERVICES (July 11, 2022), https://www.cms.gov/files/document/qso-20-15-hospital-cah-emtala-revised.pdf (last visited July 14, 2022).

[8] Exh. 2 Letter to Health Care Providers, SECRETARY OF HEALTH AND HUMAN SERVICES, https://www.hhs.gov/sites/default/files/emergency-medical-care-letter-to-health-care-providers.pdf (last visited July 14, 2022).

[9] Exh. 1 at 2.

[10] Exh. 1 at 1.

than EMTALA's emergency medical condition definition—*that state law is preempted*."[11] This has also never been a part of EMTALA. To the contrary, EMTALA "do[es] not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of [EMTALA]." 42 U.S.C. § 1395dd(f).

32. EMTALA does not mandate access to abortion or codify a right to an abortion as "stabilizing treatment" for an "emergency medical condition." The Abortion Mandate cites no other federal law that would authorize or require an abortion. No federal statute, including EMTALA, supersedes or preempts the States' power to regulate or prohibit abortion.

E. **Federal Appropriation Statutes Concerning Abortion**

33. The Hyde Amendment prohibits federal funds from being used to pay for abortions except in cases of rape, incest, or a threat to the life of the mother. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H., Tit. V, §§ 506–07.

34. The Weldon Amendment prohibits federal agencies from discriminating against any institutional or individual health care entity "on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions." *Id.*

35. And an agency cannot accomplish through administrative action something that which it is prohibited from doing by statute. *See, e.g.*, *BST Holdings, LLC v. Occupational Safety & Health Admin.*, 17 F.4th 604, 611–12 (5th Cir. 2021).

---

[11] Exh. 1 at 1–2 (emphasis in original).

### F. Texas Abortion Statutes

#### 1. Human Life Protection Act

36.    The Human Life Protection Act states that "[a] person may not knowingly perform, induce, or attempt an abortion." Act of May 25, 2021, 87th Leg., R.S., ch. 800, 2021 Tex. Sess. Law Serv. 1887 (H.B. 1280) (to be codified at Tex. Health & Safety Code Ch. 170A). That prohibition does not apply if the woman on whom the abortion is performed "has a life-threatening physical condition" arising from a pregnancy that places her "at risk of death or poses a serious risk of substantial impairment of a major bodily function unless the abortion is performed." H.B. 1280 at § 2 (to be codified at Tex. Health & Safety Code § 170A.002(b)(2)). The potential criminal penalty for violating this law is anywhere from two years to life in prison and a civil penalty not less than $100,000. *Id.* (to be codified at Tex. Health & Safety Code §§170A.004–.005); Tex. Penal Code §§ 12.32–.33.

37.    The Human Life Protection Act is effective on the thirtieth-day after the issuance of a United States Supreme Court judgment in a decision overruling *Roe v. Wade*. H.B. 1280 at § 3(1). No further action by the Texas Legislature or any state official is required—it is certain that these provisions will become effective.

#### 2. Pre-*Roe* Criminal Statutes

38.    In addition to the Human Life Protection Act, Texas has several statues predating *Roe* that address the subject of abortion. *See* Tex. Rev. Civ. Stat. arts. 4512.1–.4, .6. (2010) (former Tex. Penal Code arts. 1191–1194, 1196 (1925)). Under those statutes, any person who causes an abortion is guilty of an offense and shall be confined in a penitentiary. *Id.* at 4512.1. Moreover, an individual may not act as an accomplice to abortion or an attempted abortion. *Id.* at 4512.2–.3.

However, it is not on offense if the abortion is performed under "medical advice for the purpose of saving the life of the mother." *Id.* at 4512.6.

39.     These laws have never been repealed, and this criminal prohibition on abortion is currently the law in Texas. As the Texas Supreme Court has explained, "[w]hen a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it, even though the government may no longer constitutionally enforce it." *Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017). And the Legislature never repealed Articles 4512.1–.4 and .6. Instead, they were merely moved from the Texas Penal Code to the Texas Revised Civil Statutes. *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 399, § 5(a), 1973 Tex. Gen. Laws 883, 995 ("provid[ing] for the transfer of articles of the Penal Code of Texas, 1925, which are not repealed by this Act to the civil statutes or other appropriate places within the framework of Texas statute law, without reenactment and without altering the meaning or effect of the unrepealed articles.").

### G.    The Effects of the Abortion Mandate in Texas

40.     Texas is injured because the Abortion Mandate purports to preempt its laws. This violates Texas's "sovereign interest in the power to create and enforce a legal code." *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015) (quotation omitted). The sovereign right to enforce its criminal laws is the epitome of Texas's police power.

41.     Furthermore, the State of Texas operates hospitals that participate in Medicare. The EMTALA Guidance explicitly threatens the Medicare provider agreements for any healthcare providers that refuse to abide by the Abortion Mandate.[12] These hospitals are now threatened with

---

[12] Exh. 1 at 5 ("HHS OIG may also exclude physicians from participation in Medicare and State health care programs. CMS may also penalize a hospital by terminating its provider agreement.").

having to choose between violating state law under threat of criminal penalty or jeopardizing their ability to participate in Medicaid.

42. By requiring Medicare-participating hospitals, including hospitals operated by the State of Texas, to provide abortions when the life of the mother is *not* in danger, the Abortion Mandate directly infringes on Texas's sovereign and quasi-sovereign authority.

43. In 2020, Medicare hospital expenditures exceeded $1.2 billion.[13] For most hospitals, more than half of patient revenue is attributable to Medicaid and Medicare.[14] The intended consequence of the Abortion Mandate is that numerous physicians and hospitals in Texas will be threatened with extensive civil penalties and loss of livelihood as a result of following State law.

44. Texas has a quasi-sovereign and *parens patriae* interest in protecting the rights of its citizens and vindicating them in court. Thus, Texas may sue to challenge unlawful actions that "affect the [its] public at large." *In re Debs*, 158 U.S. 51, 584 (1895).

## IV. CLAIMS FOR RELIEF

### COUNT 1
### Defendants Acted *Ultra Vires* in Promulgating the Guidance

45. Defendants lack statutory authority to promulgate regulations altering or amending the requirements of EMTALA.

46. Defendants lack statutory authority to promulgate rules or regulations mandating that Medicare-participating hospitals and their physicians provide access to—and perform—abortions.

---

[13] *NHE Fact Sheet*, CENTERS FOR MEDICARE & MEDICAID SERVICES, https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/NationalHealthExpendData/NHE-Fact-Sheet (last visited July 14, 2022).

[14] *Medicare and Medicaid*, TEXAS HOSPITAL ASSOCIATION, https://www.tha.org/issues/medicare-and-medicaid/ (last visited July 14, 2022).

47. Moreover, under the Social Security Act, only the Secretary of HHS has authority to promulgate rules or regulations. 42 U.S.C. § 1395hh(a). The EMTALA Guidance was not issued by the Secretary of HHS but by Defendants Wright and Tritz, who lack authority to promulgate rules or regulations. *See id.*

48. Further, whether Defendants possess the political and constitutional authority they claim is a major question of "deep economic and political significance" that Courts will not assume that Congress has assigned to the Executive Branch. *See King v. Burwell*, 576 U.S. 473, 486 (2015); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000). "We presume that Congress intends to make major policy decisions itself, not leave those decisions to agencies." *West Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2609 (2022) (internal quotations omitted). As the President has acknowledged,[15] and as the Supreme Court has held,[16] the question of abortion is now properly up to the people's elected representatives—not unelected bureaucrats.

49. Defendants acted *ultra vires* and exceeded the scope of their authority.

## COUNT 2
### The Abortion Mandate Exceeds Statutory Authority and Is Not in Accordance with Law
### 5 U.S.C. § 706

50. The Abortion Mandate is being "applied . . . in a way that indicates it is binding." *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019). Therefore, it is an agency action subject to judicial review under the APA.

---

[15] *Remarks by President Biden on Protecting Access to Reproductive Health Care Services*, THE WHITE HOUSE (July 8, 2022), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/07/08/remarks-by-president-biden-on-protecting-access-to-reproductive-health-care-services/ (last visited July 14, 2022).

[16] *Dobbs*, 142 S Ct. at 2284.

51.     Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory . . . authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2)(A), (C).

52.     The Abortion Mandate is promulgated "[i]n light of the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*" and attempts so codify a "legal duty" to provide an abortion.[17] But Defendants lack statutory authority to exercise "any supervision or control over the practice of medicine or the manner in which medical services are provided." 42 U.S.C. § 1395. Defendants also lack statutory authority to codify a federal right to abortion.

53.     The Abortion Mandate also conflicts with federal law's ban on the federal government discriminating against hospitals and healthcare providers that do not provide—or refer patients for—abortions. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H., Tit. V, §§ 506–07.

54.     In addition, the Abortion Mandate conflicts with the Hyde Amendment, which prohibits federal dollars from being used to fund abortions except when the pregnancy is the result of rape or incest or the woman's life is in danger. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H., Tit. V, §§ 506–07. By conditioning the receipt of Medicare funds on providing abortions under the terms of the Abortion Mandate, Defendants are requiring the use of federal dollars to coerce healthcare providers to supply abortions outside the allowable scope under the Hyde Amendment. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H., Tit. V, §§ 506–07.

---

[17] Exhibit 1 at 1, 5.

55. The Department of Justice's appropriation act prevents it from using any funds to "require any person to perform, or facilitate in any way the performance of, any abortion." Consolidated Appropriations Act of 2022, Pub. L. 117-103, 136 Stat. 131, Div. B., Tit. II, § 203. The DOJ's defense of the Abortion Mandate would necessarily mean that it would be expending federal dollars to facilitate the performance of abortions.

56. Defendants did not act in accordance with the law and exceeded their statutory authority when they issued the Abortion Mandate.

## COUNT 3
### Failure to Conduct Notice and Comment
### 5 U.S.C. § 553

57. Defendants must comply with the APA's notice-and-comment requirements before promulgating a rule. 5 U.S.C. § 553; 42 U.S.C. § 1395hh(b).

58. Subject to certain statutory exceptions not implicated here, a "[g]eneral notice of proposed rulemaking shall be published in the Federal Register." 5 U.S.C. § 553(b). "After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(c). "The required publications or service of a substantive rule shall be made not less than 30 days before its effective date [with applicable exceptions]." 5 U.S.C. § 553(d).

59. The Social Security Act stipulates that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing the scope of benefits" or "payment for services . . . shall take effect unless it is promulgated by the Secretary," and subject to limited exception not applicable here, subject to notice and comment. 42 U.S.C. § 1395hh(a)(2), (b).

60. Notwithstanding its unconvincing disclaimer,[18] the Abortion Mandate substantively changes the conditions for payment for services by requiring Medicare-participating hospitals and physicians to perform abortions. Accordingly, Defendants were required to provide an opportunity for public notice and comment.

61. Even if Defendants were authorized by statute to promulgate the Abortion Mandate, which they are not, the Court would still have to set it aside for failure to comply with the notice-and-comment requirements. "The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

## COUNT 4
### Arbitrary and Capricious Agency Action
### 5 U.S.C. § 706(2)(A)

62. "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

63. "[A]gency action" is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An agency "rule" is defined as "the whole or a part of an agency statement or general or particular applicability and

---

[18] Exh. 1 at 1.

future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." *Id.* at § 551(4).

64. An agency action is arbitrary or capricious if it fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary and capricious." 5 U.S.C. § 706(2)(A).

65. Defendants did not engage in reasoned decision-making, but instead acted arbitrarily and capriciously, in issuing the Abortion Mandate. The Guidance contains no explanation or reasoning at all. Mere executive fiat falls well short of the requirement of a "satisfactory explanation."

66. The Guidance is arbitrary and capricious and must be set aside.

## COUNT 5
### *Ultra vires*
### Unconstitutional Exercise of Spending Power

67. "[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously," so "States [can] exercise their choice knowingly." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). The executive branch cannot impose conditions on spending that the Constitution would prohibit it from imposing directly because that authority belongs to Congress. *See id.* at 17. Only Congress can condition the receipt of federal funds.

68. EMTALA does not condition—let alone unambiguously condition—the receipt of Medicare funds on providing abortions. Texas did not—and could not—have knowingly chosen to accept Medicare funds on the condition that its abortion laws be preempted because such a preemption does not exist and would be prohibited.

69. The Guidance is an unconstitutional condition on the State's receipt of federal funds.

70. The Court must set aside the Abortion Mandate because it is an unconstitutional exercise of Spending Power. 5 U.S.C. § 706(A), (c).

## COUNT 6
### *Ultra vires*
### Unconstitutional Delegation of Legislative Power

71. Under Article I, § 1 of the Constitution, because "[a]ll legislative powers herein granted shall be vested in a Congress of the United States," only Congress may engage in lawmaking. "Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529–30 (1935).

72. This nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government.

73. Congress may delegate power to executive agencies only if that delegation includes an intelligible principle to which the delegee "is directed to conform." *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928).

74. This is necessary to preserve the Constitutionally mandated separation of powers.

75. If the Social Security Act is so broad it allows Defendants to implement a national right to abortion—irrespective of State laws—Congress did not articulate an intelligible principle authorizing such agency action.

## COUNT 7
### *Ultra Vires*
### Violation of the Tenth Amendment

76. The structure of the U.S. Constitution and the text of the Tenth Amendment protect federalism.

77. The powers not delegated by the Constitution to the federal government are reserved to the States.

78. "[T]he Constitution does not confer a right to abortion," "does not prohibit the citizens of each State from regulating or prohibiting abortion," and "return[ed] that authority to the people and their elected representatives." *Dobbs*, 142 S. Ct. at 2279, 2284. Thus, the authority to regulate abortion in Texas rests with the State of Texas.

79. "[T]he regulation of health and safety matters is primarily, and historically, a matter of local concern." *Hillsbrough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715 (1985). "Historic police powers of the States" are not superseded by federal law unless that is "the clear and manifest purpose of Congress." *Id.*; *City of Columbus v. Ours Garage & Wrecker Serv. Inc.*, 536 U.S. 424, 432 (2002).

80. For all these reasons, the Abortion Mandate an unconstitutional exercise of authority and must be held unlawful and set aside.

## V. DECLARATORY JUDGMENT

81. The federal Declaratory Judgment Act authorizes federal courts to declare the rights of litigants. 28 U.S.C. § 2201. The issuance of a declaratory judgment can serve as the basis for an injunction to give effect to the declaratory judgment. *Steffel v. Thompson*, 415 U.S. 452, 461 n. 11 (1974).

82. For the reasons described above, Texas is entitled to a declaration that the Defendants are violating the law and the Abortion Mandate is unlawful, unconstitutional, and unenforceable.

## VI. PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully requests that the Court:

i. Hold unlawful and set aside the Guidance.

ii. Declare the Defendants' actions unlawful.

iii. Issue preliminary and permanent injunctions prohibiting Defendants from enforcing the Abortion Mandate.

iv. Award Plaintiff costs and reasonable attorneys' fees.

v. Award such other relief as the Court deems equitable and just.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**CHRISTOPHER D. HILTON**
Chief, General Litigation Division
Texas Bar No. 24087727
Christopher.Hilton@oag.texas.gov

*/s/ Amy Snow Hilton*
**AMY SNOW HILTON**
Assistant Attorney General
Texas Bar No. 24097834
Amy.Hilton@oag.texas.gov

**WILLIAM D. WASSDORF**
Assistant Attorney General
Texas Bar No. 24103022
Will.Wassdorf@oag.texas.gov

**CHARLES K. ELDRED**
Special Counsel for Legal Strategy
Texas Bar No. 00793681
Charles.Eldred@oag.texas.gov

Office of the Attorney General of Texas
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

**COUNSEL FOR THE STATE OF TEXAS**