**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as<br>Secretary of Health and Human Services, *et al.*,<br><br>                    Defendants. | Civil Action No. 5:22-cv-00185-H |

## DEFENDANTS' MOTION FOR CLARIFICATION

Plaintiffs filed this suit to enjoin the enforcement of agency guidance that they allege would require abortions to be provided as emergency medical treatment when such care would be illegal under Texas law.  This Court's injunction provides that relief, stating that "defendants may not enforce" the interpretation "that Texas abortion laws are preempted by EMTALA" and enjoining defendants from enforcing their view "as to … EMTALA's effect on state laws governing abortion" either "within the State of Texas or against" the Organizational Plaintiffs' members.  Mem. Op. & Order, ECF No. 73, at 66 (Aug. 23, 2022) ("Order").  But the Court also enjoined Defendants from enforcing their interpretation of EMTALA "as to when an abortion is required" without specifying whether that prohibition would apply to emergency care that includes an abortion in circumstances that are *permitted* under state law.

Defendants have taken immediate steps to comply with the injunction, including by adding a banner to the CMS webpage where the Guidance is posted, https://www.cms.gov/Regulations-and-Guidance/Legislation/EMTALA, and revising the Guidance itself to state the injunction's terms, https://www.cms.gov/files/document/qso-22-22-hospitals.pdf.  But they respectfully seek clarification of the scope of the Court's order to facilitate their full compliance, give clarity to providers, and inform the scope of further proceedings, whether in this Court or on appeal.  *See Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 517 (5th Cir. 1969) (a party may "s[eek] district court clarification" where it "ha[s] doubts about the meaning of any part of the injunction"); *PSSI Holdings,*

*LLC v. Calhoun*, No. 5:21-CV-00080-RWS, 2021 WL 8315396, at *1 (E.D. Tex. Sept. 13, 2021) ("district courts possess the inherent procedural authority to [clarify its order] for causes seen by it to be sufficient") (citation omitted).  The Court's injunction could be taken to preclude Defendants from enforcing EMTALA's requirements even where all agree that state law would *permit* pregnancy termination—for example, to save a pregnant woman's life—and even where AAPLOG's and CMDA's members agree that abortion is a necessary treatment.  Such a reading would also sweep beyond the harms that Plaintiffs have asserted and the Court's reasoning, which focused on the extent of any conflict between federal and state law.  Thus, Defendants respectfully request that the Court clarify that its injunction does not extend to abortions that would be permitted by Texas law (or, in the case of the Organizational Plaintiffs' members, abortions that are permitted by the law of the state in which they practice and would not violate their religious convictions as the Court described them).  Defendants have met and conferred with Plaintiffs regarding this motion, and Plaintiffs have stated that they will oppose it.

## DISCUSSION

The Court's injunction states, *inter alia*, that "defendants may not enforce the Guidance and Letter's interpretation of EMTALA … as to when an abortion is required … within the State of Texas or against AAPLOG's members and CMDA's members."  Order 66.  The Guidance and Letter's interpretation is that if a physician believes that a pregnant patient is experiencing an emergency medical condition and that pregnancy termination is the stabilizing care necessary to resolve that condition, then that care must be offered.  *See* Defs.' Br. 1, ECF No. 39.  Thus, the Court's injunction could be read to bar enforcement of this interpretation in *any* circumstance where abortion is determined to be the appropriate stabilizing care—even for life-saving abortions that Texas law would allow and to which the Organizational Plaintiffs' members would not object.  Defendants do not understand the Court to have meant its order to apply to such situations, in light of its express intent to issue "a tailored, specific injunction" that would remedy only the asserted injuries of the Plaintiffs in this case.  Order 64.

Indeed, such a reading of the injunction would extend past the injuries that the Court found to confer standing and to establish irreparable harm.  Texas's standing was premised on the notion that "the Guidance unlawfully requires abortions in situations where Texas outlaws them, thus infringing on Texas's rights to legislate and enforce its abortion laws." Order 10.[1]  And the Court reasoned that, without an injunction, Texas would suffer irreparable harm because it "will not be able to enforce its abortion laws in medical emergencies." *Id.* at 60.  Similarly, the Organizational Plaintiffs' injury was premised on their members' "refus[al] to perform abortions that are elective—that is, not necessary to save the life of the mother," *id.* at 26,[2] as was the Court's description of their irreparable harm, *id.* at 60–61 (finding irreparable harm based on "AAPLOG and CMDA's members['] … inevitable violation of the Guidance's requirements with regards to abortion" based on their objection to elective abortions).  A broad reading of the injunction—barring enforcement of the Guidance even where pregnancy termination is necessary to save a pregnant patient's life and is consistent with state law—would exceed the scope of harms found by the Court.  *Cf., e.g., Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (a "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief" sought) (citation and internal quotation marks omitted).

Such a reading of the injunction would also be in tension with the Court's reasoning on the merits.  The Court concluded that the Guidance exceeded Defendants' statutory authority principally because "EMTALA creates obligations to stabilize both a pregnant woman and her unborn child, and it fails to resolve the tension when those duties conflict." *Id.* at 41.  But the Court found no conflict when pregnancy termination is necessary to save the life of the pregnant woman—indeed, it expressly

---

[1] *See also id.* at 13 (finding "an injury to its sovereign interest based on the differences between the Guidance's interpretation of EMTALA and Texas's laws governing when abortions are permitted"); *id.* at 19 (describing Guidance as "requiring physicians to perform abortions in situations not permitted by Texas law"); *id.* at 20 ("the Guidance interferes with Texas's enforcement of its laws because it encourages its hospitals and doctors to violate Texas abortion laws under threat of EMTALA liability"); *id.* at 19 (premising injury on the Guidance's assertion of preemption of state's legal code).

[2] *See also id.* at 23–24 ("In AAPLOG's view, an abortion is not medically necessary except when a separation of the unborn child is necessary to save the life of the mother. … In CMDA's view, an abortion is 'elective' and, thus not necessary, 'where the woman's life is not at stake.'").

recognized that there are situations in which "it is not impossible for hospitals and physicians to comply with both Texas law and EMTALA."  Order 45; *see also, e.g.,* Hr'g Tr. 18–19 (Aug. 18, 2022) (abortion to treat "prelabor rupture of membranes" may be permissible under Texas law); *id.* at 19 (abortion to treat "miscarriage" may be permissible under Texas law "to avoid development of sepsis"); *id.* at 58 (abortion to treat sufficiently serious "[e]mergent hypertensive disorders" would not violate Organizational Plaintiffs' members' convictions).  And because Texas law permits abortion to save the life of the mother, in that circumstance the other bases for the Court's conclusion that the Guidance exceeds EMTALA—that it inappropriately purports to preempt state law, and that it interferes with state regulation of the practice of medicine, *see* Order 2, 44–49, 52–53—would not seem to apply.  So even if EMTALA were "silent" regarding how to balance the interests of a pregnant woman and unborn child where those interests may conflict, *see id.* at 58, Defendants do not read the Court's decision as having concluded that pregnancy termination is *never* permissible stabilizing care for an emergency medical condition covered by EMTALA.  And Plaintiffs have repeatedly acknowledged that, in some cases, pregnancy termination is necessary, life-saving care that would violate neither Texas law nor the Organizational Plaintiffs' members' convictions—situations where "EMTALA would peacefully coexist with applicable state requirements."  *Id.* at 44 (citation omitted).

Nevertheless, the Court's injunction could be read to prohibit Defendants from enforcing EMTALA even in life-saving circumstances.  For the reasons explained above, Defendants do not understand this to have been the Court's intent, and thus respectfully request that the Court clarify that its injunction does not preclude Defendants from enforcing the Guidance and Letter's interpretation of EMTALA with respect to abortions that would be permitted by Texas law (or, in the case of the Organizational Plaintiffs' members, abortions that are permitted by the law of the state in which they practice and would not violate their religious convictions as the Court described them).

## CONCLUSION

Defendants respectfully request that the Court clarify its injunction as set forth above.  A proposed order is attached.

4

Dated:  September 1, 2022                    Respectfully Submitted,

                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General

                                            BRIAN D. NETTER
                                            Deputy Assistant Attorney General

                                            JENNIFER D. RICKETTS
                                            Director, Federal Programs Branch

                                            ERIC B. BECKENHAUER
                                            Assistant Branch Director

                                            */s/ Christopher R.  Healy*
                                            CHRISTOPHER R. HEALY
                                            KATE TALMOR
                                            ALEXANDER N. ELY
                                            Trial Attorneys
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street NW, Washington, DC 20005
                                            Tel: (202) 305-5267
                                            kate.talmor@usdoj.gov
                                            Christopher.Healy@usdoj.gov
                                            alexander.n.ely@usdoj.gov

                                            *Counsel for Defendants*