UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| STATE OF TEXAS, et al., § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> XAVIER BECERRA, in his official § <br> capacity as Secretary of Health and § <br> Human Services, et al., § <br> *Defendants*. § | CIVIL ACTION NO. 5:22-CV-00185-H |

### PLAINTIFFS' RESPONSE TO
### DEFENDANTS' MOTION FOR CLARIFICATION

Plaintiffs respond in opposition to Defendants' ("HHS's") motion for clarification (Dkt. #86). HHS's motion attempts to create confusion where there is clarity. The motion is effectively asking the Court to substantially narrow its injunction, contradict its rationale, and subject both the State and the members of AAPLOG and CMDA to the same prejudice the Court protected them from in its injunction. The motion should be denied.

**I.     The Order is clear.**

There is nothing unclear about the Court's Order. HHS "may not enforce the Guidance and Letter's interpretation" (i.e., the Abortion Mandate), either "that Texas abortion laws are preempted by EMTALA," or the Guidance and Letter's interpretation "of EMTALA—both as to when an abortion is required and EMTALA's effect on state laws governing abortion—within the State of Texas or against AAPLOG's members and CMDA's members." Dkt. #73 at 66. Despite HHS's claim, the Order clearly applies to "abortion," not just to some abortions, and does not allow HHS to use the mandate's interpretation to force covered hospitals or physicians to

perform any abortions. It also applies in a limited but clear scope: to hospitals and physicians in Texas, and to AAPLOG's and CMDA's members in whatever state they reside. *Id.*

The Court's rationale is equally clear and simple. HHS's abortion mandate exceeds the authority Congress gave HHS in EMTALA, because EMTALA "protects both mothers and unborn children, is silent as to abortion, and preempts state law only when the two directly conflict." *Id.* at 1. As such, EMTALA gives HHS no authority to mandate abortions, and consequently there can be no "direct[] conflict" between EMTALA and state abortion laws so as to preempt them.

The Court clearly identified why the mandate is illegal. It is likely contrary to law under the APA because it exceeds HHS's statutory authority, and it is likely in violation of the procedural requirement that a substantive legal standard first be subjected to notice to the public and an opportunity to comment. *Id.* at 39, 55.

## II. The Court's rationales preclude HHS's request to narrow the injunction.

These rationales preclude HHS's request to narrow the injunction, for three reasons.

*First*, the Court did not hold that HHS can regulate "life of the mother" situations. It said Congress left those situations to states to regulate, and Texas has done so here in a way that protects mothers without an abortion mandate. The Court insisted that "EMTALA is unclear about the obligations of doctors in cases of conflict between the health of a pregnant woman and her unborn child," and that "EMTALA provides no instructions on what a physician is to do when there is a conflict between the health of the mother and the unborn child." *Id.* at 44–45. This is because EMTALA says nothing about abortion and affirmatively requires protecting the unborn child. *Id.* at 1. In light of Congress's silence on how to fulfill the stabilization requirement where

both lives are at risk, "State law fills this void." *Id.* at 45. Texas has filled the void, allowing but not mandating abortions in certain high-risk cases, and prohibiting abortions in other cases. Any attempt by HHS to use EMTALA to mandate some abortions, even the ones Texas allows, would deprive Texas of the prerogative Congress left to states when it precluded preemption absent "direct" conflicts and disavowed regulating the practice of medicine. *Id.* at 43 n.12.

***Second***, the Court protected AAPLOG's and CMDA's members from pressure caused by imposing a mandate in these difficult cases. HHS's mandate is illegal especially because it is "broad and undifferentiating," "provid[ing] no exceptions for healthcare providers with genuinely held religious objections to abortions," so that "AAPLOG and CMDA members who object to abortions on medical, ethical, and religious grounds face the threat of monetary penalties and exclusion from federal healthcare programs unless they perform abortions that violate their beliefs." *Id.* at 63. Letting HHS mandate even *some* abortions would put AAPLOG's and CMDA's members right back into the quandary the Court protected them from: facing massive penalties by the federal government in rapidly developing situations where difficult medical, ethical, and religious issues arise. It is "doctors," not HHS, who "must—in accordance with state law" "resolve that conflict" when both the mother's and the child's lives are at stake. *Id.* at 43. And the doctors here *do* resolve those cases, with great compassion for both mothers and children. Congress gave HHS no authority to do these doctors' jobs. Reinserting a federal agency, avowedly pro-abortion, into these tragic circumstances nationwide causes tremendous risk to the conscience and religious freedom rights of AAPLOG's and CMDA's members.

***Third***, HHS's request to narrow the injunction should be denied because it is inconsistent with the legal flaws the Court identified. The mandate lacks legal authority as just discussed. But

HHS's failure to submit the rule for notice and comment also precludes letting it partially enforce the mandate. It was a monumental decision for HHS to mandate some abortions for the first time in EMTALA's history. It raised a host of questions about state sovereignty, religious liberty, and the major questions doctrine, to name just three. The plaintiffs also raised substantial questions about the conflict between the mandate and federal health care conscience laws that have no exemptions in emergency cases, RFRA which restricts the application of EMTALA, and Texas law protecting doctors who object to abortions. *Id.* at 63 n.24. But in its rush to undermine the Supreme Court's *Dobbs* decision, HHS deprived all the plaintiffs, and all other members of the public, of any opportunity to comment on that mandate. Letting HHS use this mandate to coerce the performance of some abortions would put the federal government's nose right back under the tent that caused the procedural injury this Court remedied in its Order. *See id.* at 21–22.

### III. Plaintiffs' complaint and injunction request encompassed the Order.

Despite HHS's suggestion that this case only challenges the mandate in part, Plaintiffs' complaint and injunction motion challenged the entire mandate and HHS's underlying authority to issue it. For example, in their Amended Complaint, Plaintiffs contended EMTALA "nowhere allows Defendants to require abortions," and asked the Court to preliminarily enjoin enforcement of the entire mandate, hold it unlawful, and set it aside. Dkt. #18 at 22, 30–31. Plaintiffs' motion likewise asked the Court to "enjoin Defendants from implementing and enforcing the Abortion Mandate." Dkt. #23 at 25.

HHS essentially argues that what is permitted can be mandated. This is incorrect. The federal government is a government of limited powers. Congress left to Texas the authority to protect mothers and unborn children where their lives are both tragically at risk, and Texas does

so permissively but without abortion mandates. AAPLOG's and CMDA's members likewise ensure they save as many women's and children's lives as possible, while reserving their religious and health care conscience rights to navigate these difficult situations without a federal sword of Damocles hanging over their heads. HHS's motion potentially risks negating the ruling entirely for AAPLOG's and CMDA's members living in states where abortion is not illegal, but whose performance has heretofore not been mandated.

### IV.   HHS does not need clarification of the injunction to enforce EMTALA as before.

Before HHS issued the Abortion Mandate, nothing stopped HHS from enforcing EMTALA to prevent patient dumping, and nothing in the injunction suggests HHS cannot still do that. The injunction only resets HHS to the status quo prior to a Mandate that for the first time attempted to define abortions as required and as preempting state law, even though Congress left that conflict to state regulation of medical practice. No clarification is needed to let HHS continue to enforce EMTALA against patient dumping because the injunction already explicitly limits itself to this new interpretation. HHS has many guidances enforcing EMTALA against patient dumping, and nothing in the injunction prevents their enforcement. But HHS also asks the court to let it mandate abortions in cases where the state allows them. That is improper because it is outside EMTALA's scope and was not subjected to notice and comment, for the reasons the court carefully explained in its Order.

### V.   Conclusion.

The Court's injunction maintains the status quo in which there has never been a federal abortion mandate, state laws protect women without such a mandate, and states and doctors are free to protect unborn children. The Court should deny Defendants' motion for clarification.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**CHRISTOPHER D. HILTON**
Chief, General Litigation Division
Texas Bar No. 24087727
Christopher.Hilton@oag.texas.gov

*/s/ Amy Snow Hilton*
**AMY SNOW HILTON**
Assistant Attorney General
Texas Bar No. 24097834
Amy.Hilton@oag.texas.gov

**WILLIAM D. WASSDORF**
Assistant Attorney General
Texas Bar No. 24103022
Will.Wassdorf@oag.texas.gov

**CHARLES K. ELDRED**
Special Counsel for Legal Strategy
Texas Bar No. 00793681
Charles.Eldred@oag.texas.gov

Office of the Attorney General of Texas
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

**COUNSEL FOR THE STATE OF TEXAS**

*/s/ Ryan L. Bangert*
**RYAN L. BANGERT**
TX Bar No. 24045446
rbangert@ADFlegal.org

**MATTHEW S. BOWMAN**
DC Bar No. 993261
mbowman@ADFlegal.org

Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622

**COUNSEL FOR AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS AND GYNECOLOGISTS, AND CHRISTIAN MEDICAL AND DENTAL ASSOCIATIONS**

## CERTIFICATE OF SERVICE

  We certify that a true and accurate copy of the foregoing document was filed electronically via CM/ECF.

           */s/ Amy S. Hilton*   */s/ Ryan Bangert*
           Amy S. Hilton     Ryan Bangert