**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

STATE OF TEXAS, *et al.*,

              Plaintiffs,

v.

XAVIER BECERRA, in his official capacity as
Secretary of Health and Human Services, *et al.*,

              Defendants.

Civil Action No. 5:22-cv-00185-H

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR CLARIFICATION

Plaintiffs' Opposition to Defendants' Motion for Clarification, ECF No. 91 ("Opposition"), underscores why clarification is needed. Plaintiffs interpret this Court's injunction to sweep so broadly that it would prohibit HHS from enforcing EMTALA even where the federal statutory obligation to offer stabilizing treatment to patients who present with emergency medical conditions would *not* conflict with Texas law or with Organizational Plaintiffs' stated religious convictions. As HHS explained in its motion, ECF No. 86 ("Motion"), that interpretation of the Court's ruling would far exceed the harms articulated by Plaintiffs and found by the Court and would present considerable tension with this Court's reasoning. Defendants respectfully request that the Court clarify that its injunction does not bar HHS from enforcing EMTALA in situations permitted by Texas law or, in the case of Organizational Plaintiffs' members, in situations that are permitted by the law of the state in which they practice and would not violate their religious convictions as described by the Court.

Plaintiffs' claims of injury and irreparable harm rest on alleged conflicts: Texas contends that HHS's interpretation of EMTALA conflicts with its abortion restrictions, while AAPLOG and CMDA insist that the agency's interpretation would force their members to violate their religious convictions. *See* Pls.' Br. in Supp. of Mot. for TRO & Prelim. Inj., ECF No. 23 at 1, 6-8, 23. When this Court granted the requested preliminary injunction, it grounded its decision in those same alleged harms. *See* Order, ECF No. 73 at 13 (finding "an injury to [Texas's] sovereign interest based on the differences between the Guidance's interpretation of EMTALA and Texas's laws governing when

abortions are permitted"); *id.* at 20 (determining that EMTALA Guidance "interferes with Texas's enforcement of its laws because it encourages its hospitals and doctors to violate Texas abortion laws … "); *id.* at 26 (finding injury based on Organizational Plaintiffs' "refus[al] to provide abortions that are elective—that is, not necessary to save the life of the mother"). As Defendants demonstrated in their Motion, particularly at this preliminary stage, the court should not issue a remedy "more burdensome to the defendant than necessary to provide complete relief to the plaintiffs"—meaning that Plaintiffs cannot obtain a preliminary injunction barring HHS from enforcing EMTALA in circumstances that do not injure them. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Rather than engage with that argument, Plaintiffs assert that granting Defendants' motion would cause them "prejudice," Opposition 1, without attempting to explain how Plaintiffs could be harmed by allowing HHS to ensure that women do not die of preventable deaths due to the denial of life-saving abortions that Plaintiffs concede are permissible under both Texas law and members' religious beliefs. Plaintiffs' failure to articulate any concrete harm they would suffer is reason enough to grant Defendants' motion.

In the absence of any concrete harms, Plaintiffs fall back on the Court's finding of a likely procedural violation in "HHS's failure to submit the rule for notice and comment" and argue that HHS therefore should not be able to "partially enforce the mandate." Opposition at 4. That argument mischaracterizes Defendants' request: HHS seeks clarification that it can enforce *EMTALA itself*, not the Guidance, in situations where there is no conflict with state law or members' stated religious objections. Defendants are cognizant that, after full consideration of the merits, the Court may disagree with HHS's interpretation of EMTALA's requirements—but at this stage, Defendants respectfully contend that the Court should not foreclose, as a matter of preliminary equitable relief, the agency's enforcement of the statute in situations where there is no harm to Plaintiffs. Aside from that, even at final judgment the remedy for a notice-and-comment violation would not be a sweeping injunction barring enforcement of a statute Congress charged an agency with administering. *Tex. Ass'n of Mfrs. v. U.S. Consumer Product Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021) ("Remand, not vacatur, is generally appropriate when there is at least a serious possibility that the agency will be able to

substantiate its decision given an opportunity to do so."). Here, the Court has not reached any final judgment but instead has exercised its equitable powers to ensure that Plaintiffs do not sustain irreparable injury during the pendency of the litigation. An injunction sweeping more broadly than necessary would undermine federal policy interests by conflicting with Congress's judgment that patients at Medicare-participating hospital emergency departments should receive necessary stabilizing treatment for medical emergencies and likely would cause tragic, preventable deaths within Texas. There are thus strong reasons this Court should clarify that its injunction reaches only Plaintiffs' alleged harms and does not prohibit enforcement of EMTALA where no conflict exists.

Furthermore, Plaintiffs' reliance on what they characterize as "tremendous risk to the conscience and religious freedom rights of AAPLOG's and CMDA's members," Opposition 3, is meritless. As Plaintiffs' declarations made clear, the Organizational Plaintiffs object only to *elective* abortions, and their member physicians acknowledge that, in some instances, abortion is necessary (and thus permissible under their religious convictions) to save a pregnant patient's life. An injunction prohibiting HHS from ensuring that patients do not die needlessly due to the denial of readily available, life-saving care would far exceed the religious objections alleged by Plaintiffs. HHS does not, as Plaintiffs charge, seek "to do these doctors' jobs," *id.*, but to ensure that necessary stabilizing treatment is provided in situations where a physician has determined that an emergency medical condition exists. Contrary to Plaintiffs' suggestion, EMTALA does not permit doctors to stand by as pregnant patients die because they are denied "abortions, even the ones Texas allows" and to which members do not have religious objections. *Id.*

Finally, Plaintiffs argue for the first time that HHS's enforcement of EMTALA is limited "to prevent[ing] patient dumping," and claim that their interpretation of the Court's injunction merely "resets HHS to the status quo." Opposition 5. Even putting aside the lack of clarity regarding what Plaintiffs mean by "patient dumping," this limitation on HHS's enforcement of EMTALA goes well beyond the relief issued by the Court, would upset HHS's settled views on how EMTALA should be enforced, including in situations unrelated to abortion, and is unwarranted. For instance, under Plaintiffs' counterfactual view of HHS's enforcement ability, the agency would be prevented from

enforcing EMTALA in a straightforward application, such as if a hospital failed to provide an appropriate medical screening examination and/or stabilizing treatment, if necessary, for a patient presenting with severe chest pain that may indicate a cardiac event. After all, EMTALA's guarantee that patients receive stabilizing treatment when they present to a participating hospital with an emergency medical condition would be a dead letter were HHS limited to preventing "patient dumping." Defendants seek clarification of this Court's injunction precisely so that they can ensure patients receive appropriate stabilizing treatment in situations outside the conflicts alleged by Plaintiffs and found by this Court.

Defendants thus respectfully request that the Court clarify its injunction.

Dated:  September 26, 2022

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

ERIC B. BECKENHAUER
Assistant Branch Director

*/s/ Kate Talmor*
KATE TALMOR
CHRISTOPHER HEALY
ALEXANDER N. ELY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Washington, DC 20005
Tel: (202) 305-5267
kate.talmor@usdoj.gov
christopher.Healy@usdoj.gov
alexander.n.ely@usdoj.gov

*Counsel for Defendants*

4